UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JEANNE MARCHIG and THE MARCHIG ANIMAL
WELFARE TRUST,

                           Plaintiffs,                         10 Civ. 3624 (JGK)

            -against-

CHRISTIE'S INC.,

                          Defendant.

------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

LAW OFFICES OF RICHARD A. ALTMAN
Attorneys for Plaintiffs
285 West Fourth Street
New York, New York 10014
212.633.0123
altmanlaw@earthlink.net
artesq@earthlink.net

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARDS ON A RULE 12(b)(6) MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I:
PLAINTIFFS HAVE STATED FIVE LEGALLY SUFFICIENT CLAIMS... . . . . . . . . . . . . . . . 6
    Christie's obligations are not limited by the consignment agreement, and the
    claims are not duplicative.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
First Claim: Breach of Fiduciary Duty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    1. Christie's is a fiduciary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    2. The complaint alleges substantial breaches of fiduciary duty. . . . . . . . . . . . . . . . . . . . . 10

Second Claim: Breach of Warranty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Third Claim: Negligence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fourth Claim: Negligent Appraisal or Misrepresentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fifth Claim: Replevin and Conversion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT II:
A CLAIM FOR BREACH OF FIDUCIARY DUTY DOES NOT ARISE UNTIL
THE RELATION TERMINATES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT III:
THE FIRST FOUR CLAIMS ACCRUED WHEN PLAINTIFFS LEARNED OF CHRISTIE'S
FAILURE TO ATTRIBUTE THE DRAWING PROPERLY.  THUS ALL OF THE
CLAIMS ARE TIMELY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

POINT IV:
THE SECOND, THIRD AND FOURTH CLAIMS ARE TIMELY BECAUSE OF THE
CONTINUOUS TREATMENT OR REPRESENTATION DOCTRINE... . . . . . . . . . . . . . . . . 23

POINT V
THE MARCHIG TRUST IS A PROPER PLAINTIFF... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

Page

FEDERAL CASES

*Anwar v. Fairfield Greenwich, Ltd.*, 2010 U.S. Dist. LEXIS 86716 (S.D.N.Y. Aug. 18, 2010).. . . . . . .  20

*Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). . . . . . . . . . . . . . . . . . . . . .  1, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). . . . . . . . . . .  1, 2

*Ciccone v. Hersh*, 320 Fed. Appx. 48 (2d Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Clarendon Nat'l Ins. Co. v. Health Plan Administrators*, 2009 U.S. Dist. LEXIS 88135
     (S.D.N.Y.September 24, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2d Cir.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*GLM Corp. v. Klein*, 665 F.Supp. 283 (S.D.N.Y.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Golden Pacific Bancorp v. FDIC*, 273 F.3d 509 (2d Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 22

*Grosz v. Museum of Modern Art*, 2010 U.S. Dist. LEXIS 1667 (S.D.N.Y. January 6, 2010),
     *reconsideration den.* 2010 U.S. Dist. LEXIS 20248 (S.D.N.Y., Mar. 3, 2010). . . . . . . . . . . . . .  18

*Harris v. City of New York*, 186 F.3d 243 (2d Cir.1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Harris v. Mills*, 572 F.3d 66 (2d Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173 (S.D.N.Y. 2008), *rev'd on other grds.*,
     201024 U.S. App. LEXIS 12735 (2d Cir., June 22, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir.2000).. . . . . . . . . . . . . . . . . . . . .  16, 17

*International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir.1977), *cert. den.* 434 U.S. 1014 (1978). . . . . . .  1

*In re Weideman*, 327 Fed. Appx. 215 (2d Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Levin v. Dalva Bros. Inc.*, 459 F.3d 68 (1st Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220 (S.D.N.Y.1991), *rev'd on other grds.*,
     967 F.2d 742 (2d Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209 (2d Cir.2002). . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.*, 2004 U.S. Dist. LEXIS 11761, 2004
     WL 1444868 (S.D.N.Y. June 25, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Morris Okun, Inc. v. Harry Zimmerman, Inc*, 814 F. Supp. 346 (S.D.N.Y.1993)................... 20

*Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank*, 261 F.R.D. 13 (S.D.N.Y.2009), *aff'd* 2010 U.S. App. LEXIS 13199, 2010 WL 2588195 (2d Cir. June 29, 2010). ................... 8

*Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir.1995)........................................... 3

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir.2010). ................. 3

*Republic of Turkey v. Metropolitan Museum of Art*, 762 F.Supp. 44 (S.D.N.Y.1990). ............... 19

*Take-Two Interactive Software, Inc. v. Brant*, 2010 U.S. Dist. LEXIS 32120 (S.D.N.Y. Mar. 31, 2010). . 3

*Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078 (2d Cir.1988). ............................... 23

*Zola v. Gordon*, 685 F. Supp. 354 (S.D.N.Y.1988)........................................... 22

STATE CASES

*Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 529 N.Y.S.2d 279 (1st Dept.1988)........ 7

*Bd. of Ed. of the Hudson City School Dist. v. Thompson Construction Corp.*, 111 A.D.2d 497, 488 N.Y.S.2d 880 (3d Dept.1985). ............................................... 23

*Biddles, Inc. v. Enright*, 239 N.Y. 354 (1925)............................................... 10

*Borgia v. City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (1962). ........... 23

*Colello v. Colello*, 9 A.D.3d 855, 780 N.Y.S.2d 450 (2004)..................................... 12

*Cristallina S. A. v. Christie, Manson & Woods International, Inc.*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dept.1986). ........................................... 10, 11, 17

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1958). ........................................ 14

*Derdiarian v. Felix Constr. Corp.*, 51 N.Y.2d 308 (1980)....................................... 15

*Dolan v. Delaware & Hudson Canal Co.*, 71 N.Y. 285 (1877).................................... 15

*E.S.T., Inc. v. Christie's Inc.*, 6/28/2001 N.Y.L.J. 20, Index No. 112793/2000 (Sup.N.Y. Co.2001). ......................................................... 13, 14

*EBC I, Inc. v Goldman, Sachs & Co.*, 5 N.Y.3d 11, 832 NE2d 26, 799 N.Y.S.2d 170 (2005). ....... 8

*Glamm v. Allen*, 57 N.Y.2d 87, 439 N.E.2d 390, 453 N.Y.S.2d 674 (1982)...................... 23

*Greene v. Greene*, 56 N.Y.2d 86, 436 N.E.2d 496, 451 N.Y.S.2d 46 (1982). . . . . . . . . . . . . . . . . . . . .   24

*Gross v. Stern*, 276 A.D.2d 591 (2d Dept.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Guedj v. Dana*, 11 A.D.3d 368 (1ˢᵗ Dept.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*IDT Corporation v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 879 N.Y.S.2d 355 (2009),
    *rearg. den.* 12 N.Y.3d 889, 883 N.Y.S.2d 793 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 482 N.E.2d 63, 492 N.Y.S.2d 584. . . . . . . . . . . . . . . .   14

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Kronos, Inc. v AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289, 595 N.Y.S.2d 931 (1993). . . . . . . . . . . .   22

*Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dept.1987). . . . . . . . . . . . . . .    7

*McDermott v. Torre*, 56 N.Y.2d 399, 437 N.E.2d 1108, 452 N.Y.S.2d 351 (1982). . . . . . . . . . . . . . .   24

*Parrott v Coopers & Lybrand*, 95 N.Y.2d 479, 741 N.E.2d 506, 718 N.Y.S.2d 709 (2000). . . . . . . . . .   16

*Rich v. New York C. & H. R. R. Co.*, 87 N.Y. 382 (1882). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Sadowski v Long Is. R. R. Co.*, 292 N.Y. 448 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Shumsky v. Eisenstein*, 96 N.Y.2d 164, 750 N.E.2d 67, 726 N.Y.S.2d 365 (2001). . . . . . . . . . . . . . . .   24

*Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623,
    569 N.E.2d 426 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 19

*Tahini Invs. v. Bobrowsky*, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dept.1984). . . . . . . . . . . . . . . . .   14

*Tony Shafrazi Gallery Inc. v. Christie's Inc.*, Index No. 112192/07 (Sup.N.Y.Co. 2008). . . . . . . . . . . .   13

*Trepuk v. Frank*, 44 N.Y.2d 723 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Westchester Religious Inst. v. Kamerman*, 262 A.D.2d 131, 691 N.Y.S.2d 502 (1st Dept. 1999). . . . . . .   20


FEDERAL STATUTES AND RULES

F.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6

F.R.Civ.P. 17(a)(1)(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

F.R.Civ.P. 17(a)(1)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

F.R.Civ.P. 17(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25


STATE STATUTES

N.Y. Arts & Cultural Affairs L. § 11.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

N.Y. Arts & Cultural Affairs L. § 13.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 12, 18

N.Y. CPLR 214 subd. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

N.Y. Gen.Bus.L. § 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10


OTHER AUTHORITIES

Annesley, Attributing Old Master Drawings, *in* Spencer, ed., The Expert versus the Object:
    Judging Fakes and False Attributions in the Visual Arts (2004).  . . . . . . . . . . . . . . . . . . . . .  4

Bennett, Fine Art Auctions and the Law: A Reassessment in the Aftermath of Cristallina,
    16 Colum.-VLA J.L. & Arts 257 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Jauregui, Rembrandt Portraits: Economic Negligence in Art Attribution, 44 U.C.L.A. L. Rev.
    1947 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Karlen, Fakes, Forgeries, and Expert Opinions, 16:3 J. Arts Mgmt. & Law 5 (1986). . . . . . . . . . . . .  1

Lerner & Bresler, 1 Art Law: The Guide for Collectors, Dealers and Artists (3d ed.2005).  . . .  10, 12

Levy, Liability of the Art Expert for Professional Malpractice, 1991 Wis. L. Rev. 595 (1991). . . . .  12

Singer, "Sotheby's Sold Me a Fake!" Holding Auction Houses Accountable for Authenticating
    and Attributing Works of Fine Art, 23 Colum-VLA J.L. & Arts 439 (2000).  . . . . . . . . . . .  12

Spencer, ed., The Expert versus the Object: Judging Fakes and False Attributions
    in the Visual Arts (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Spencer, The Risk of Legal Liability for Attributions of Visual Art, *in* Spencer, ed., The Expert
    versus the Object: Judging Fakes and False Attributions in the Visual Arts (2004). . . . . . .  12

http://www.telegraph.co.uk/culture/art/artnews/7309299/Christies-sued-for-misidentifying-
    Titian-painting-worth-millions.html. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

<u>MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS</u>

<u>Preliminary Statement</u>

Plaintiffs' attorneys, Law Offices of Richard A. Altman, submit this memorandum of law in opposition to defendant Christie's motion to dismiss the amended complaint.[1]  This is their second attempt to evade responsibility for the consequences of breaching their obligations to the plaintiffs. Christie's misinterprets the case law, omits binding precedents from cases against them, makes erroneous and false statements of fact not supported by (and flatly contradictory to) the complaint, and provides a superficial analysis of the issues.  Most importantly, they ask this Court to determine as a matter of law issues which are fact-dependent and cannot be resolved without discovery.  Their motion should be denied, and they should be directed to serve an answer to the complaint so that discovery can proceed and this important case can be determined on the merits.

The primary basis for the motion is the statute of limitations.  It will be shown that all of the claims are timely.  Although Christie's also argues that the five claims are insufficiently pleaded, the allegations in the complaint contain everything legally required to state those claims, even under the standards of *Ashcroft* and *Iqbal*.  Christie's also asserts that any claims other than those arising under the consignment agreement are barred as duplicative, but they are not; those claims are distinct. Finally, they challenge the newly added fifth claim, for replevin and conversion, which seeks recovery of the frame which the Drawing was in when it was sent to New York, or damages if it is no longer in possession of Christie's.

We make two preliminary points.  First, Christie's says that plaintiffs have changed their theory of the case, in that the original complaint claimed that Christie's should be liable for failure to

---

[1]  Inasmuch as an amended complaint replaces the original for all purposes, *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977), *cert. den.* 434 U.S. 1014 (1978), references herein to the complaint should be understood as referring to the amended complaint, unless the context requires otherwise.  Christie's frequent citations to its prior motion to dismiss are unnecessarily confusing, because the complaint it was directed to is no longer in the case.

attribute the Drawing to Leonardo da Vinci, but that in opposition to their first motion to dismiss, plaintiffs only claimed that Christie's was at fault for failing to identify the Drawing as being Italian and from the 15th century.  This is not so.  Neither the original complaint nor the amended complaint attempt to set out the limits of those obligations.  Paragraph 111 at 15 says only that "[d]efendant's investigation of the attribution of the Drawing was inadequate, and failed to comport with the standards to be expected of a reputable auction house and its in-house experts."  Paragraph 129 at 17 says that "[d]efendant had a duty to use due care which was reasonable under the circumstances to ascertain the creator, age and place of origin of the Drawing."  What would have been an adequate investigation, and what degree of due care was reasonable under the circumstances, are quintessential jury questions.  Plaintiffs have not changed their theories of recovery.

Second, Christie's accuses plaintiffs of "again demanding over $150 million in damages" (Def. Mem. at 1).  The accusation is false and inflammatory.  The *ad damnum* clause in the complaint (at 21) "demands damages on their first, second, third and fourth claims against defendant in amounts to be determined."  The clause in the original complaint was identical.  Moreover, the media interest in this case–and the potential prejudice to the ability to empanel a fair and impartial jury–would have been even greater had plaintiffs demanded a specific sum.  Of course, it is relevant that the Drawing is believed to have been insured for $100 million, and that a London art dealer has estimated its value at more than £100 million (complaint, ¶¶ 81, 82 at 12).  But that only demonstrates the importance of the case, not necessarily the damages which a jury and the Court could award.

<u>STANDARDS ON A RULE 12(b)(6) MOTION</u>

Defendant Christie's moves pursuant to F.R.Civ.P. 12(b)(6) to dismiss this action on the grounds of the statute of limitations and for failure to state a claim upon which relief can be granted.  The standards for granting such a motion are demanding, and are not met here.  Plaintiffs need plead only "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A claim will have "facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  The complaint must be construed liberally, all of its factual allegations must be deemed true, and the Court must draw all reasonable inferences in plaintiffs' favor, *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir.2009). "[A] motion to dismiss does not involve consideration of whether a plaintiff will ultimately prevail on the merits, but instead solely whether the claimant is entitled to offer evidence in support of his claims." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir.2010)(citation and quotation marks omitted).

A motion to dismiss based upon the statute of limitations cannot be granted unless the face of the complaint shows without question (and without considering disputed facts) that the action is untimely.  "What that means in the statute of limitations context is that dismissal is appropriate only if a complaint clearly shows the claim is out of time...the statute of limitations is an affirmative defense under Rule 8(c) that [a plaintiff's] pleading need not have anticipated...The survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred." *Harris v. City of New York*, 186 F.3d 243, 250-51 (2d Cir.1999) (citations omitted);  *Take-Two Interactive Software, Inc. v. Brant*, 2010 U.S. Dist. LEXIS 32120 at *12 (S.D.N.Y. Mar. 31, 2010).  If a defendant cannot make such a showing, the issue cannot be resolved until after discovery and trial.  *Harris, supra*;  *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir.1995). Under these standards, the Court should deny this motion and direct Christie's to answer the complaint.

## STATEMENT OF THE FACTS

In 1955, plaintiff Jeanne Marchig, a Swedish citizen living in Geneva, Switzerland, married Giannino Marchig, a well-known artist and art restorer, with considerable expertise in Italian

Renaissance art.  In 1966, they first made the acquaintance of Noel Annesley[2], who at that time had been employed by defendant Christie's for two years.  Over the years, they became personal friends and had a professional and trustful relationship (complaint, ¶¶ 14, 19-23 at 3-4).  Beginning in 1969, she and her husband consigned many art works to Christie's.  From 1969 until 2009, she and her husband (until his death in 1983) did so on at least 32 occasions.  Some of those transactions were reflected in letters between the parties (*id.*, ¶¶ 24-36 at 4-6, Exhs. B-E).

In 1997, plaintiff Jeanne Marchig consigned a pen-and-ink drawing ("the Drawing") which had been owned by her husband to defendant Christie's, to be sold at auction, along with other works of art belonging to them.  They entered into a consignment agreement in late August 1997 (*id.*, Exh. G).  Christie's knew that she intended to donate the proceeds of the sale to plaintiff The Marchig Animal Welfare Trust, an English and Scottish charitable trust of which she is a trustee. (*id.*, ¶¶ 15, 37-40 at 3, 6-7).

At the time of the consignment, she informed Christie's of her late husband's belief that the Drawing was from the 15th century, and by Domenico Ghirlandaio, an early Italian Renaissance painter and a teacher of Michelangelo (*id.*, ¶¶ 4-5 at 2 and 42 at 7).  The Drawing was examined by François Borne, at the time the resident expert at Christie's of Old Master Drawings.  He spent fifteen minutes examining the Drawing, and, ignoring Mme. Marchig's beliefs, concluded that it was a German drawing from the 19th Century.  He advised her that the Drawing was a "superb German drawing in the taste of the Italian Renaissance...an object of great taste," but that he "would be tempted to change the frame in order to make it seem an amateur object of the 19th century and not an Italian pastiche."  (*Id.*, ¶ 45 at 7).

---

[2]  Mr. Annesley is a well-known expert on Old Master drawings, *see* Annesley, Attributing Old Master Drawings, *in* Spencer, ed., The Expert versus the Object: Judging Fakes and False Attributions in the Visual Arts (2004) at 79-88.

Mme. Marchig reluctantly accepted this assessment and attribution, but did not consent to change the original Italian frame.  However, Christie's changed the frame anyway, and it was sold with a different frame.  The original frame has not been returned to her, despite a demand being made for its return in June 2010 (*id.*, ¶¶ 49-52 at 8, 152-59 at 19-20).  The Drawing was listed in the auction catalog as "the property of a lady," and "German, 19th Century."  It sold at a public auction in January 1998 for $21,850, and plaintiffs received the proceeds less defendant's commission (*id.*, ¶¶ 54-56 at 8-9).  Plaintiffs thereafter had no knowledge of the Drawing's location or ownership until 2009.

Both before and after the sale of the Drawing, the parties had many additional dealings as part of a continuing relationship, including the sale of additional works of art, and there were many communications between plaintiffs and Christie's.  In one of those letters, dated April 17, 2007, Mr. Annesley says that "I was touched to be reminded of the fact that you and I first met as long ago as 1966, only two years after I joined Christie's.  It is very rewarding to have an association that goes back over so many years."  *Id.*, Exh. E.

In July 2009, Mme. Marchig received a telephone call from Mr. Annesley, informing her for the first time that there had been claims made that the Drawing was actually by Leonardo da Vinci.  She was "devastated by this news," and then began to investigate the attribution of the Drawing on her own (*id.*, ¶¶ 57-60 at 9).  Mr. Annesley and Christie's in-house counsel sent her a series of letters and emails regarding the new attribution, and the former even traveled from London to Geneva to meet with her in person to discuss the situation and to determine what to do about it (*id.*, Exhs. N-R).

In April 2010, a book was published by two experts, Martin Kemp and Pascal Cotte, respectively a Leonardo scholar and an optical scientist, setting out the artistic and scientific evidence to support the attribution to Leonardo.  Among the scientific evidence is a fragment of a fingerprint and palm print on the Drawing which match those on a known Leonardo.  A carbon-14 analysis showed that the Drawing was almost certainly created between 1440 and 1650.  Among the stylistic evidence is a careful comparison of the pen strokes on the Drawing, which go in the direction that

a left-handed artist (Leonardo was left-handed) would draw them.  The complaint summarizes some of the other evidence in favor of the attribution, including statements by other Leonardo scholars who have examined the Drawing and have stated that it is genuine (*id.*, ¶¶ 60-78 at 9-11; Exhs. K-O). The Drawing has been insured for a sum in excess of $100 million, and has been estimated to be worth £ 100 million, which is approximately $150 million (*id.*, ¶ 81-82 at 12).

## PROCEDURAL HISTORY

Plaintiffs sought to resolve the matter with Christie's, but when Christie's refused, they brought this action on May 3, 2010, seeking unspecified damages under four legal theories: (1) Breach of fiduciary duty; (2) Breach of warranty; (3) Negligence; and (4) Negligent misrepresentation.

On May 23, Christie's moved to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(6). Plaintiffs opposed the motion, and on August 5, 2010, the Court denied the motion and granted plaintiffs leave to serve and file an amended complaint.  Plaintiffs did so, on August 13, 2010, with the same four claims as were present in the original complaint, plus a fifth claim, for replevin and conversion, seeking an order compelling the return of the frame that the Drawing was in when it was originally delivered to Christie's, or damages if it is not returned.

Christie's now moves again to dismiss, asserting that all of the claims are time-barred, and that none of the five claims in the complaint is legally sufficient.  They further seek to dismiss any claims brought on behalf of the plaintiff Marchig Animal Welfare Trust.  It will be shown that all of the claims are legally sufficient and timely, and that there is no basis to dismiss the Trust as a plaintiff.

## POINT I

### PLAINTIFFS HAVE STATED FIVE LEGALLY SUFFICIENT CLAIMS.

Christie's obligations are not limited by the consignment agreement,
and the claims are not duplicative.

Christie's seeks dismissal on the ground that it had no obligations other than those created by the consignment agreement, and that all of the other claims must therefore be dismissed as

duplicative.  But Christie's had both contractual and extra-contractual obligations, and the claims do not arise solely under the agreement.

Under the agreement, their only obligations were to "offer [the Drawing] for sale at public auction" at a specified commission rate (Exh. G at 1), and to remit the net proceeds to the Seller, less the commission, within 35 days, assuming that the buyer had paid (*id.* at 3).  The costs of insurance, packing, shipping, customs, catalogue illustrations, restoration, testing and promotion of the sale were all the consignor's responsibility (*id.* at 2).

There is no dispute that Christie's performed its principal obligations under the consignment agreement: They sold the Drawing at a public auction, and remitted the net proceeds.  But the obligations which were breached were all imposed by law and were outside the contract.  "A contracting party may be charged with separate tort liability if it arises from a breach of duty that is distinct from the breach of contract."  *Clarendon Nat'l Ins. Co. v. Health Plan Administrators*, 2009 U.S. Dist. LEXIS 88135 at *11 (S.D.N.Y. September 24, 2009).  "[T]he existence of a fiduciary duty is not coterminous with a contractual obligation. Rather, the proper focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement."  *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 55, 529 N.Y.S.2d 279, 282 (1st Dept.1988);  *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167-168, 521 N.Y.S.2d 672, 676 (1st Dept.1987).

First, as an auction house, and a highly skilled expert in Old Master drawings, Christie's had fiduciary obligations to the plaintiffs, requiring that they use that expertise to investigate the age, authenticity and attribution of the Drawing and determine those aspects of it correctly (complaint, ¶¶ 96-112 at 14-15).  Those obligations arose by law, not by agreement.  Second, their attempted disclaimer of warranties was ineffective with respect to attribution, and thus there is a claim for breach of the warranty of attribution, which is also outside the agreement (*id.*, ¶¶ 116-123 at 16).  Third, they were negligent in that they violated their duty to the plaintiffs to act as a reasonably prudent expert

-7-

auction house and to exercise that degree of due care which was reasonable under the circumstances, proximately causing damages to the plaintiffs (*id.*, ¶ 126-134 at 17).   Fourth, as a fiduciary with specialized knowledge and the obligations to provide correct, accurate and complete information, they were liable for false and erroneous statements, regardless of their knowledge of their falsity.   Plaintiffs were entitled to rely upon those statements, did so rely and were damaged (*id.*, ¶¶ 137-149 at 18-19).

None of these actions and inactions violated obligations imposed by the consignment agreement; all of the obligations arose outside of it.   "If a contract establishes a relationship of trust and confidence between the parties, such as that between agent and principal, then a fiduciary duty arises from the contract which is independent of the contractual obligation. And a breach of contract which also constitutes a breach of that fiduciary obligation is not merely a broken promise, but, outside of and beyond that, there is trust betrayed and confidence abused; there is constructive fraud." *GLM Corp. v. Klein*, 665 F.Supp. 283, 286 (S.D.N.Y. 1986)(quotation marks and citation omitted; *citing Rich v. New York C. & H. R. R. Co.*, 87 N.Y. 382, 395 [1882])   Accordingly, the tort claims are not duplicative of any contract claims; each of them has an independent basis and should not be dismissed.

First Claim:  Breach of Fiduciary Duty

A fiduciary relationship exists between the parties here, as a matter of law, and plaintiff has stated a claim for breach of it.  *See EBC I, Inc. v Goldman, Sachs & Co.*, 5 N.Y.3d 11, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005).  "New York courts generally avoid dismissing a claim of breach of fiduciary duty…because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence."  *Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank*, 261 F.R.D. 13, 26 (S.D.N.Y.2009), *aff'd* 2010 U.S. App. LEXIS 13199, 2010 WL 2588195 (2d Cir. June 29, 2010);  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1231 (S.D.N.Y.1991), *rev'd on other grds.*, 967 F.2d 742 (2d Cir.1992).  "To prevail on a breach of fiduciary duty claim, a plaintiff must prove: (1) a fiduciary duty existing between the parties; (2) the

defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach." *Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.*, 2004 U.S. Dist. LEXIS 11761 at *25-6, 2004 WL 1444868 at *9 (S.D.N.Y. June 25, 2004).

1.  Christie's is a fiduciary.

Auction houses are fiduciaries with respect to their consignors, and have obligations beyond those of the marketplace and the consignment agreement.  The most significant authority supporting this proposition (and unmentioned either in Christie's first motion or this one) is *Cristallina S. A. v. Christie, Manson & Woods International, Inc.*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dept.1986).  In that case, the plaintiff, a Panamanian corporation engaged solely in the purchase and sale of art works (and therefore having substantial art expertise) had consigned eight Impressionist paintings to Christie's. The auction was a failure, and Cristallina sued Christie's and its former president for damages, claiming that they intentionally or negligently misrepresented the sum the paintings would bring at auction, manipulated the reserve prices, and failed to advise it of the risks inherent in such a sale.  The Appellate Division said:

> The auctioneer is the agent of the consignor.  As an agent, Christie's had a fiduciary duty to act in the utmost good faith and in the interest of Cristallina, its principal, throughout their relationship. When a breach of that duty occurs, the agent is liable for damages caused to the principal, whether the cause of action is based on contract or on negligence...Moreover, where, as here, an agent is selected because of its special fitness for the performance of the duties to be undertaken, the principal is entitled to rely on the agent's judgment and integrity...[A]n auctioneer...is nonetheless held to a standard of care commensurate with the special skill which is the norm in the locality for that kind of work. Thus, the breach of contract, negligence and breach of fiduciary duty causes of action should not have been dismissed since sufficient has been shown to present a factual question as to whether Christie's and Bathurst acted in a manner commensurate with their skill and expertise...
> 117 A.D.3d at 292-94 (quotation marks and citations omitted).

Thus, Christie's had significant fiduciary obligations to the plaintiffs here as a matter of law. Those obligations were even greater than those it had toward Cristallina, because, unlike the plaintiffs, Cristallina had significant expertise of its own in the art market, and thus less need to rely upon Christie's judgment and advice.  Buying and selling art was its sole activity, unlike Mme. Marchig, who

relied upon Christie's assessment and evaluation of the Drawing.  Furthermore, because Christie's was a party to the very case which ruled that auction houses are fiduciaries with respect to their consignors, they are collaterally estopped from arguing to the contrary (see 14, *infra*).

Christie's, like every auctioneer in this City, is heavily regulated by statute, common law and regulations of the New York City Department of Consumer Affairs.[3]  "The business of an auctioneer, while perfectly legal, has always been affected with a public interest and subject to legislative restriction."  *Biddles, Inc. v. Enright*, 239 N.Y. 354, 365 (1925).  *See generally* Lerner & Bresler, 1 Art Law: The Guide for Collectors, Dealers and Artists, Appendix 4-6 at 435-449 (3d ed.2005).  *See also* N.Y. Arts & Cultural Affairs L. §§ 11.01(2), 13.01,);  N.Y. Gen.Bus.L. § 25;  *Levin v. Dalva Bros. Inc.*, 459 F.3d 68, 77 (1st Cir.2006).  The purpose of such extensive regulation is intended to protect the general public and those who deal with auction houses.  Thus, there are specific fiduciary obligations imposed by law, going beyond the contractual obligations between the parties.

2.  The complaint alleges substantial breaches of fiduciary duty.

There are many particulars in the complaint supporting the claim of breach of fiduciary duty. M. Borne's dismissal of Mme. Marchig's husband's belief that the Drawing was by Ghirlandaio, and his arrogant refusal to take that suggestion seriously (¶¶ 4-7 at 2, 43-48 at 7-8), his insistence that it had to be a German drawing from the 19th century despite its being on vellum (an unusual medium for such a supposedly late work, well after the Renaissance)(¶ 43 at 7), the fifteen minutes he spent examining the Drawing (¶ 6 at 2 ), his insistence upon changing the original frame so it would not look like "an Italian pastiche," over her objection (¶ 51 at 8), Christie's failure to return the frame (¶ 52 at 8), its  failure to investigate the actual age of the drawing by then-readily available non-

_____

[3] The auctioneer in the *Cristallina* case, Christopher J. Burge, signed the consignment agreement on behalf of Christie's in this case (complaint, Exh. G at 4).  According to the case, Christie's had after the auction entered into a consent judgment with the New York City Department of Consumer Affairs, which had accused them of issuing a false press release about the sale.  Christie's was fined $80,000 and Burge's and Bathurst's auction licenses were suspended.  The Appellate Division found these facts significant in refusing to dismiss a claim for punitive damages.

destructive carbon dating, let alone their failure to assess its age reasonably accurately by routine and well-established methods of analysis and connoisseurship, all support a claim for breach of fiduciary obligations.

Thus, Christie's defense, amounting to nothing more than "no one could have known...." should be rejected.  There was a great deal that could have been known, under then-current standards of technology and connoisseurship, had Christie's properly discharged its fiduciary responsibilities and applied its much-vaunted expertise in Old Master drawings to this Drawing.  Christie's is "held to a standard of care commensurate with the special skill which is the norm in the locality for that kind of work... [It is] a factual question as to whether Christie's and Bathurst acted in a manner commensurate with their skill and expertise..."  *Cristallina, supra*, 117 A.D.3d at 293-94.  There is a factual question whether Christie's violated those standards here.

At a minimum, an expert in Old Master drawings should surely be able to date a drawing with a margin of error of less than 400 years, and to tell the difference between a German drawing and an Italian one, almost on sight.  Had Christie's taken Mme. Marchig's suggested attribution seriously, the Drawing would have at the least likely been identified correctly as an Italian drawing from the 15th Century, obviously worth far more than $22,000, no matter who the artist might have been.  During discovery and trial, those standards will be the subject of expert testimony, and will show that Christie's utterly failed to protect Mme. Marchig, refused to investigate her beliefs as to the age and attribution of the Drawing, should have been able to do so correctly, and should be liable for their failure to do so.

It is no answer that Christie's would surely have preferred to sell the Drawing as a Leonardo because of the enormous commission they would probably have earned.  That is not the issue.

Rather, the issue is the standard of care imposed on fiduciaries; a fiduciary's potential personal gain is irrelevant to performance of its obligations.[4]

In sum, to state a claim for breach of a fiduciary duty, plaintiff must establish the existence of a fiduciary relationship, misconduct by the defendant, that the misconduct induced plaintiff to engage in the transaction in question, and that the misconduct directly caused plaintiff's loss. *Colello v. Colello*, 9 A.D.3d 855, 859, 780 N.Y.S.2d 450 (4th Dept.2004). All of these elements are present here, and so the complaint alleges sufficient facts to state a claim for breach of fiduciary obligations.[5]

Second Claim: Breach of Warranty

The Second Claim is based upon the consignment agreement between the parties (complaint, Exh. G), and the warranties contained therein. Christie's argues that the agreement contains "a broad disclaimer in Christie's favor" (Memo at 15). This is not correct. The disclaimer provides in pertinent part as follows (Exh. B at 2): "7. Christie's shall not be liable for any errors or omissions in catalogue or other descriptions of the property...Christie's makes no representations or warranties to Seller with respect to the Property, its authenticity, condition or otherwise." But plaintiffs' claim is based upon

---

[4] In a recent case in London, Christie's UK was sued for misattributing a painting which turned out to be by Titian. They sold it at auction in 1993 for £8,000 after assessing it as being "from the school of Titian." Their rival Sotheby's later put it up for sale for $4-$6 million in 2009 after it was identified as a Titian original, although it did not sell. The former owners sued Christie's and settled earlier this year for an undisclosed sum. *See* Christie's sued for misidentifying Titian painting worth millions, *available at* http://www.telegraph.co.uk/culture/art/art-news/7309299/Christies-sued-for-misidentifying-Titian-painting-worth-millions.html (accessed May 23, 2010).

[5] The secondary literature on the liability of experts for misattribution is substantial and instructive. *See generally* Singer, "Sotheby's Sold Me a Fake!" Holding Auction Houses Accountable for Authenticating and Attributing Works of Fine Art, 23 Colum-VLA J.L. & Arts 439 (2000); Spencer, The Risk of Legal Liability for Attributions of Visual Art, *in* Spencer, ed., The Expert versus the Object, *supra*, n. 3 at 143-187; Jauregui, Rembrandt Portraits: Economic Negligence in Art Attribution, 44 U.C.L.A. L. Rev. 1947 (1997); Bennett, Fine Art Auctions and the Law: A Reassessment in the Aftermath of Cristallina, 16 Colum.-VLA J.L. & Arts 257 (1992); Levy, Liability of the Art Expert for Professional Malpractice, 1991 Wis. L. Rev. 595 (1991); Karlen, Fakes, Forgeries, and Expert Opinions, 16:3 J. Arts Mgmt. & Law 5 (1986); 1 Lerner & Bresler, Art Law, *supra*, The Auction House and the Consignor, at 333-387.

the failure to <u>attribute</u> the Drawing correctly.  The quoted language does not disclaim any warranties with respect to attribution.  The claim simply says that Christie's misattribution is a breach of its warranty to attribute consigned works correctly and that plaintiffs have been damaged by that breach.[6]

Christie's argument was rejected in another case well-known to them, and directly on point, *E.S.T., Inc. v. Christie's Inc.*, 6/28/2001 N.Y.L.J. 20, Index No. 112793/2000 (Sup.N.Y. Co.2001)(copy attached as Exh. A).  The plaintiff there had consigned a painting to Christie's for sale. Its in-house expert attributed the painting to Sistro Badolocchio, and it sold at auction for $12,000.  It was later discovered that the painting was actually by Annibale Carracci, a far more important 17th century painter, and was worth approximately $300,000.  E.S.T. sued over the misattribution, claiming that Christie's was negligent and had breached its fiduciary duty.  Christie's moved to dismiss on the basis of the consignment agreement, which contained the following language: "Christie's makes no representation or warranties to Consignor with respect to the property, its authenticity, condition or otherwise....Christie's shall not be liable for any errors or omissions in catalogue or other descriptions of the property."  The provisions in the *E.S.T., Inc.* case and the present case are essentially identical.

The Court held that "attribution" was not the same thing as "authenticity" and was not included within it, and that because Christie's had drafted the agreement and could easily have inserted the word, any ambiguity should be construed against them.  The Court refused to dismiss the complaint, saying that it could not determine as a matter of law that misattribution was included in the disclaimed matters, and directed Christie's to answer the complaint.  Christie's did so and the matter was later settled.[7]

---

[6]   Christie's cites *Tony Shafrazi Gallery Inc. v. Christie's Inc.*, Index No. 112192/07 (Sup.N.Y.Co. 2008) and annexed a copy to its first set of motion papers.  But that case involved warranty obligations to a <u>purchaser</u>, not fiduciary obligations to a consignor.  It has nothing to do with our case.

[7]   Christie's standard form consignment agreement was subsequently changed to include a disclaimer of any warranty of attribution.

The relevant provision in the consignment agreement in this case does not insulate Christie's from liability for its misattribution of the Drawing, just as the identical provision did not do so in the *E.S.T., Inc.* case. As a party to that case, Christie's is collaterally estopped from arguing that the agreement bars plaintiffs' claims here. Christie's says that collateral estoppel does not apply, because "E.S.T is an unreported preliminary trial court decision; the issues were never fully litigated (and the case is the only one of its kind)." (Def. Mem. at 15). These arguments cannot be taken seriously. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65-66 (2d Cir.2007).

> There are now but two requirements which must be satisfied before the doctrine is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.
> *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985)(citations and quotation marks omitted).

In the *E.S.T.* case, Christie's had a full and fair opportunity to litigate the issue in New York County Supreme Court, and the issue is identical and decisive here. Its interpretation of the provision was rejected, the court holding that attribution and authenticity were not the same thing, that the provision was ambiguous and to be resolved against Christie's, and that there was a question of fact which could not be resolved on a motion to dismiss. It is irrelevant that the case was unreported, that it was preliminary, and that it is the only one of its kind, whatever that means. The provision in the consignment agreement in this case does not preclude a claim for breach of the warranty of attribution, and the claim for breach of warranty is sufficiently pleaded.

But even beyond the holding in *E.S.T, Inc*, there are public policy reasons which preclude Christie's from disclaiming liability for its misattribution. Even an express disclaimer will not be given effect where the facts are peculiarly within the knowledge of the party invoking it. *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322 (1958); *Tahini Invs. v. Bobrowsky*, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dept.1984). Furthermore, such disclaimers are barred by the New York Arts & Cultural Affairs Law. Section § 13.01, entitled Express Warranties, reads in pertinent part as follows:

-14-

Notwithstanding any provision of any other law to the contrary:
...
4. (a) An express warranty and disclaimers intended to negate or limit such warranty shall be construed wherever reasonable as consistent with each other but...negation or limitation is inoperative to the extent that such construction is unreasonable.
(b) Such negation or limitation shall be deemed unreasonable if:...(iii) the information provided is proved to be, as of the date of sale or exchange, false, mistaken or erroneous.

Under this statute, any limitations upon the scope of an art merchant's warranty are unreasonable if the information is proved to be "false, mistaken or erroneous" as of the date of the sale. This is the case here. Although the statute speaks of warranties provided to non-merchant buyers, its application is not necessarily limited to buyers, and a consignor should be at least as entitled to the benefit of such a warranty as the buyer. The complaint alleges that the attribution was false, mistaken or erroneous, and therefore the second claim is sufficient to state a claim for breach of warranty.

Third Claim: Negligence

The third claim is for common-law negligence. "Under New York law, the elements of a negligence claim are: (I) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach [citing cases]." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir.2002). It is long established that the scope of the duty owed in negligence cases, and whether that duty was breached, are generally questions of fact for the jury. *Dolan v. Delaware & Hudson Canal Co.*, 71 N.Y. 285, 288 (1877); *Derdiarian v. Felix Constr. Corp.*, 51 N.Y.2d 308, 315 (1980)("Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve."); *Sadowski v Long Is. R. R. Co.*, 292 N.Y. 448, 455 (1944).

This brings us to the question as to whether defendant breached this duty by negligence on its part. It was particularly appropriate to leave this issue to the jury, not only because of the idiosyncratic nature of most tort cases, or because there was room for a difference in view as to whether Victory's conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because, in the determination of issues revolving about the reasonableness

of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process

*Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 388 (1980)(citations omitted).

The third claim alleges that Christie's "had a duty to plaintiffs to act as a reasonably prudent expert auction house," (¶ 126 at 17), that the duty included "correctly attributing the Drawing to the artist who created it, and correctly estimating its age and place of origin...to use due care which was reasonable under the circumstances [and] to obtain the best possible price," (¶¶ 127-130 at 17), that they "failed to exercise due care, and to act as a reasonably prudent expert" (¶ 131 at 17), that Christie's was negligent, that plaintiffs were financially damaged by the negligence and that the negligence was the proximate cause of plaintiffs' damages (¶¶ 132-134 at 17).

Accordingly, the claim is sufficiently pleaded.  The questions of the nature and scope of Christie's duty, and whether they breached that duty, are properly for the jury, and not resolvable on a motion to dismiss.  To answer them will require expert witness testimony regarding the nature of the relation between auction houses and their consignors, the nature of connoisseurship and the technology of attribution, and a host of other complex factors.  The third claim is sufficiently pleaded.

Fourth Claim:  Negligent Appraisal or Misrepresentation.

Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.  However, the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20-21 (2d Cir.2000)(citations omitted).

*See also Parrott v Coopers & Lybrand*, 95 N.Y.2d 479, 484, 741 N.E.2d 506, 718 N.Y.S.2d 709 (2000).  The tort of negligent misrepresentation involves breach of "a duty to speak with care." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996).  It arises in the context of "[p]rofessionals, such as lawyers or engineers, [who] by virtue of their training and expertise, may have special relationships of confidence and trust with their clients."  Such professionals can be subjected

to "liability for negligent misrepresentation when they have failed to speak with care." *Id.* at 263-64. Thus, "in order to impose tort liability here, there must be some identifiable source of a special duty of care. The existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* at 264.

By authority of the *Cristallina* case, a special relationship exists here as a matter of law.  The fiduciary relation is sufficient to create liability for false negligent statements, so long as there are allegations of falsity, reliance and damages.  The complaint alleges that Christie's, a fiduciary, "made statements to plaintiffs, and to the general public in its auction catalog, that the Drawing was 'German School, early 19th Century,' 'a German drawing in the taste of the Italian Renaissance,' that it was advisable to 'change the frame in order to make it seem an amateur object of the 19th century and not an Italian pastiche,' and that it was 'a German drawing in the taste of the Renaissance'" (¶ 137 at 18). All of these statements were factual, not promissory.

The complaint further alleges that (1)  the statements were false and erroneous when made, and that Christie's should have so known, because of their specialized knowledge and expertise, and that they could have so learned with a reasonable investigation (¶¶ 138-41 at 18); (2) Christie's knew that plaintiffs required accurate information in order to  sell  the Drawing at the highest possible price, that they intended to rely and act upon Christie's opinions and statements of fact, and would be damaged by false or erroneous information (¶¶ 142-44 at 18); (3) plaintiffs had the right to rely upon Christie's for correct and truthful information as to the attribution, and did so rely (¶¶ 145-46 at 18-19); (4) plaintiffs placed complete trust and confidence in Christie's to attribute the Drawing accurately (¶ 147 at 19); (5)  Christie's  false statements damaged plaintiffs, and it is liable for damages in an amount to be determined (¶ 149 at 19).  Thus, all of the requirements of the claim, as set out in *Hydro Investors, Inc., supra*, are met, and it should not be dismissed.

5.  Replevin and Conversion

      The Fifth Claim is for replevin or conversion.  Plaintiffs seek the return of the frame which the Drawing was in when it was shipped to Christie's, and which has not been returned to them.  In the alternative, plaintiffs demand damages for the value of the frame if it is not returned.  Christie's argument against this simple claim is nothing more than that plaintiffs waited too long.  This argument borders on the frivolous.  It is well-established under New York law that an essential substantive element of a claim for replevin of a chattel is the demand for the return of the chattel, and the refusal or failure of the person in possession to return it.  The claim is not affected by the owner's knowledge of the location of the chattel.  *Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991);  *Grosz v. Museum of Modern Art*, 2010 U.S. Dist. LEXIS 1667 (S.D.N.Y. January 6, 2010), *reconsideration den.* 2010 U.S. Dist. LEXIS 20248 (S.D.N.Y., Mar. 3, 2010).   The statute of limitations is three years from the demand and refusal, CPLR 214 subd. 3.

      The demand and refusal need not take specific form; any words or actions which express an intention to assert control over the chattel and to deny the owner's right to immediate possession is sufficient.  *Grosz, supra*, 2010 U.S. Dist. LEXIS 1667 at * 24-26.  Plaintiffs demanded the return of the frame in June 2010, and Christie's acknowledged the demand (complaint, Exh. S).  But there has been no further response since then, and Christie's seeking to dismiss this claim demonstrates either an unwillingness or an inability to return the frame.  Plaintiffs are not obliged to wait for a formal refusal.

      But apart from the law of replevin, why doesn't Christie's simply moot the claim <u>by returning the frame</u>?  Either they have it or they don't, but they don't say which.  After all, there is no dispute that (1) it was delivered to them with the Drawing, (2) the frame was changed, (3) the Drawing was sold in a different frame, (4) plaintiffs have demanded its return and are entitled to it, and (5) it has not been returned.  So if Christie's has it, they should return it, and if they don't have it, they are liable for conversion.  There are no other options.  Their refusal to address the question one way or the other is a strong indication that Christie's is not acting in good faith.

Furthermore, whether the delay in demanding the return of the frame was reasonable or not is solely a fact-based question of laches, and does not affect the accrual of the cause of action, nor does it make it untimely as a matter of law. *See Republic of Turkey v. Metropolitan Museum of Art*, 762 F.Supp. 44, 46 (S.D.N.Y.1990). Mere delay is not sufficient; prejudice to a defendant caused by the delay is an essential element of a laches defense. *Solomon R. Guggenheim Foundation, supra*, 77 N.Y.2d at 321. Christie's does not allege prejudice and there is none in any event. The claim is sufficient and timely.

In a final stretch, they argue that there is no jurisdiction over the fifth claim, because plaintiffs have not alleged that the frame is worth the jurisdictional minimum of $75,000. To be precise, they say that the Court *would have* no jurisdiction over this claim *if* all of the other claims are dismissed. This is of course correct as far as it goes, but in a diversity case, each claim need not be worth $75,000, so long as the total amount in dispute exceeds that sum.

*****

In conclusion, all five claims are legally sufficient, and Christie's motion to dismiss for failure to state a claim upon which relief can be granted should be denied.

## POINT II

### A CLAIM FOR BREACH OF FIDUCIARY DUTY DOES NOT ARISE UNTIL THE RELATIONSHIP TERMINATES.

Under New York law, the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated. In such cases, the statutory period [is] tolled between the alleged fiduciary misconduct and the date on which the fiduciary relationship is openly repudiated or otherwise ended, so that any misconduct alleged before that end date falls within the permissible temporal scope... The reason for such a tolling rule is that the beneficiary should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit.
*Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 518-19 (2d Cir.2001)(citations and quotation marks omitted).

*See also Ciccone v. Hersh*, 320 Fed. Appx. 48, 50 (2d Cir.2009)(statute of limitations "began to run either at the point the closer than arms-length relationship with Hersh ended, and/or, at the point at which there are no clear indicia of an ongoing continuous, developing, and dependent relationship.") (citation and quotation marks omitted); *Westchester Religious Inst. v. Kamerman*, 262 A.D.2d 131, 132, 691 N.Y.S.2d 502, 503 (1st Dept. 1999)("since defendants cannot have been said to have openly repudiated their fiduciary obligations prior to leaving their positions of trust in 1990, the statutory period did not begin to run in defendants' favor until that time"); *Anwar v. Fairfield Greenwich, Ltd.*, 2010 U.S. Dist. LEXIS 86716 at *193-94 (S.D.N.Y. Aug. 18, 2010).

A claim for breach of fiduciary duty is not the same as a professional malpractice claim; it is significantly broader. A fiduciary's obligations are not solely those of a professional exercising judgment on behalf of a client and giving advice. A fiduciary can breach a duty by, for example, embezzling funds, *In re Weideman*, 327 Fed. Appx. 215, 234 (2d Cir.2009)(secret loan arrangement by lawyer), or by failing to account, *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 349 (S.D.N.Y.1993). These are not malpractice claims. Similarly, the claims here go beyond malpractice. Hence they cannot be time-barred because they did not arise until the relationship terminated in 2010.

Exhibit A to the complaint shows a series of transactions continually from 1968 until 2009. In each and every one of these transactions, Christie's had fiduciary obligations. It is true that there are gaps in the sequence and there are periods of time with no transactions[8], which Christie's has seized upon as somehow having legal significance (Mem. at 3-4). But given the regularity with which the plaintiffs consigned works to Christie's for sale, more than thirty times over a period of <u>forty years</u>, the Court cannot fairly conclude, as a matter of law, that this is <u>not</u> "a continuous relationship of trust and confidence." If anything, the opposite is true.

---

[8] There are other transactions for which records have not yet been located. Plaintiffs are continuing to search for those records, and intend to provide them in discovery.

There are other examples of Christie's recognizing its fiduciary obligations.  Mme. Marchig wrote to Mr. Annesley in August 2009, informing him of her intention to hold Christie's responsible for the misattribution (Exh. N).  She received a response the next month from Christie's in-house counsel (Exh. O), acknowledging their continued responsibility towards her ("[y]ou are a very valued client at Christie's, as was your husband, and we are honored by the trust you have shown us").  Exhibit P is a letter dated 29 September 2009 from Mr. Annesley to Mme. Marchig, sending her a copy of the 1998 auction sale catalog in which the Drawing was listed; "We do find ourselves in an extraordinary situation, and I really do appreciate your concerns, and also your very friendly and positive approach. I continue to feel that the best way forward is for each of us to alert the other with any developments as they take place."  The next month, he wrote her again, after their meeting in London; saying "this new attribution raises a whole host of questions." (Exh. Q).  Then he sent her an email on 7 January 2010:   "In keeping with our efforts to keep each other fully informed of developments regarding the so-called 'La Bella Milanese,' I wanted to bring to your attention the January issue of Art News." (Exh. R).

These are not the actions and words of an ordinary seller of property to a customer after the consummation of a commercial transaction.  Rather, they are the actions and words of a fiduciary who deemed himself, and the auction house of which he was the Honorary Chairman, to have ongoing obligations to a long-standing client, and to keep her informed about the status of what Christie's had done and intended to do on her behalf.  It will require discovery, to explore fully the nature and extent of his contacts with her since the sale of the Drawing, and of his intentions behind those contacts.

Given their freely volunteering the information about the re-attribution of the Drawing, it ill behooves Christie's to invoke the statute of limitations, and they should in any event be estopped from doing so.  The continuing existence of the fiduciary relation between the parties, from 1968 until

2009, is sufficient to bar assertion of the statute of limitations.  Accordingly, the first claim accrued when plaintiffs terminated the relation in 2010, and not before.  *Golden Pacific Bancorp v. FDIC, supra*.

POINT III

THE FIRST FOUR CLAIMS ACCRUED WHEN PLAINTIFFS<br>LEARNED OF CHRISTIE'S FAILURE TO ATTRIBUTE THE<br>DRAWING PROPERLY.  THUS ALL OF THE CLAIMS ARE TIMELY.

Christie's argues that the statute of limitation has run on the four tort claims, because the Drawing was sold in 1998.  But the claims did not accrue in 1998.  They accrued in the summer of 2009, when Christie's for the first time informed Mme. Marchig, through Noël Annesley, its Chairman Emeritus, of the attribution of the Drawing to Leonardo.  This information placed her on notice, and she then accumulated sufficient evidence as a result of her own investigation to be able to claim in good faith that Christie's had breached its obligations, and that plaintiffs had been damaged.

The applicable statute of limitations for the first claim, the breach of fiduciary duty seeking money damages, is three years.  *IDT Corporation v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 879 N.Y.S.2d 355 (2009), *rearg. den.* 12 N.Y.3d 889, 883 N.Y.S.2d 793 (2009).  But the claim did not accrue, and the statute of limitations did not begin to run, until plaintiffs learned that the Drawing was by Leonardo, because before then, they could not have truthfully alleged that they had been damaged. The *IDT* Court said that "[a] tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.  As with other torts in which damage is an essential element, *the claim is not enforceable until damages are sustained.*" *Id.*, 12 N.Y.2d at 140 (citation and quotation marks omitted,  emphasis added).  *See also Kronos, Inc. v AVX Corp.*, 81 N.Y.2d 90, 96, 612 N.E.2d 289, 293, 595 N.Y.S.2d 931, 935 (1993)("In tort, however, there is no enforceable right until there is loss. It is the incurring of damage that engenders a legally cognizable right.").

Putting it another way, the statute of limitations for a claim for breach of fiduciary duty "does not commence running until the plaintiff has actual or constructive knowledge of the breach." *Zola v. Gordon*, 685 F. Supp. 354, 374 (S.D.N.Y.1988)(citing cases).  Plaintiffs had no knowledge of

-22-

Christie's breach of its fiduciary duty until learning of the attribution of the Drawing to Leonardo. Before then, they could not allege that they had incurred damages, or accuse defendant of wrongdoing. *See also Gross v. Stern*, 276 A.D.2d 591 (2d Dept.2000)("The plaintiff has alleged legally cognizable claims against the appellants for, inter alia, breach of fiduciary duty and an accounting. The claims are not time-barred since the plaintiff commenced this action within two years of her discovery of the alleged breach") (citations omitted); *Guedj v. Dana*, 11 A.D.3d 368 (1st Dept. 2004).

Whether the statute runs from the termination of the relationship, or from the plaintiff's knowledge of the breach, this action is timely. Moreover, whether a plaintiff knew or should have known of the facts underlying a claim is generally a factual question, not resolvable on a motion to dismiss. *Trepuk v. Frank*, 44 N.Y.2d 723 (1978). The first four claims are thus timely.

POINT IV

THE SECOND, THIRD AND FOURTH CLAIMS ARE TIMELY BECAUSE OF THE
CONTINUOUS TREATMENT OR REPRESENTATION DOCTRINE.

The doctrine of continuous treatment, or continuous representation, also applies to the facts of this case. When there is a relation of trust and confidence, requiring application of specialized professional skills, a claim for breach of the obligations does not arise during the relation, but only when the relation terminates. Until then, the statute of limitations is tolled. *Borgia v. City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (1962); *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1081 (2d Cir.1988)("the rationale is supported by the need for flexibility in determining the cause of a latent injury"). In such cases, the statute of limitations will not begin to run until the representation ends. *See Glamm v. Allen*, 57 N.Y.2d 87, 94, 439 N.E.2d 390, 453 N.Y.S.2d 674 (1982).

The list of professionals subject to the continuous treatment doctrine has expanded significantly beyond physicians since *Borgia*. *See Bd. of Ed. of the Hudson City School Dist. v. Thompson Construction Corp.*, 111 A.D.2d 497, 499, 488 N.Y.S.2d 880, 882 (3d Dept.1985)("[*Borgia*] has been expanded to include all claims, irrespective of the applicable Statute of Limitations, where, due to the

professional relationship, its use is appropriate"). What all of these professions have in common is that their practitioners possess special skills and expertise by virtue of education and training, and that they are generally in a fiduciary relation to those whose interests they represent.

There are two policy reasons for the rule. First, "a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or manner in which the services are rendered." *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 167, 750 N.E.2d 67, 726 N.Y.S.2d 365 (2001) (quotation marks omitted); *Greene v. Greene*, 56 N.Y.2d 86, 94, 436 N.E.2d 496, 500; 451 N.Y.S.2d 46, 50 (1982). Second, tolling the statute of limitations under such circumstances encourages corrective action. *McDermott v. Torre*, 56 N.Y.2d 399, 408,  437 N.E.2d 1108, 452 N.Y.S.2d 351 (1982)(citation omitted). However, after the relationship ends, these considerations no longer obtain and the time to sue begins to run.

Accordingly, the statute of limitations was tolled from 1998 until 2009 under the doctrine of continuous representation, and because the parties had a mutual understanding of the need for further advice and representation regarding the attribution of the Drawing. Christie's believed it had continuing fiduciary obligations on many occasions between 1998 and 2009 (and acted on them), not to mention during the thirty years preceding the sale of the Drawing. The claims are thus all timely. At the least, the question of the applicability of the doctrine is fact-dependent, and cannot be granted on a motion directed solely to the face of the complaint.

POINT V

THE MARCHIG TRUST IS A PROPER PLAINTIFF.

Christie's final point is that plaintiff The Marchig Animal Welfare Trust should be dismissed for lack of standing, *i.e.*, that the Trust is not the real party in interest. But the Trust is not seeking to enforce the contract as a third-party beneficiary, and Christie's analysis is off the point. Rather, the Trust is entitled to be a plaintiff pursuant to F.R.Civ.P. 17(a)(1)(E) and (F), which permit "a trustee

-24-

of an express trust," or "a party with whom or in whose name a contract has been made for another's benefit" to sue.  Furthermore, pursuant to Rule 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

Mme. Marchig is a real party in interest, and the Trust is an intended beneficiary of her claims. That is sufficient to permit both she and the Trust of which she is a trustee to be plaintiffs.  See the extensive analysis in *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 196 n. 13 (S.D.N.Y. 2008), *rev'd on other grds.*, 2010 U.S. App. LEXIS 12735 (2d Cir., June 22, 2010)("the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.")(citation omitted).  There are no such concerns here, and both Mme. Marchig and the Trust are proper plaintiffs.

<u>CONCLUSION</u>

Based upon the foregoing, this motion should be denied, and defendant should be directed to serve an answer to the complaint.

Dated: New York, New York
         September 10, 2010

                                                    /S/
                                        LAW  OFFICES  OF  RICHARD  A.
                                        ALTMAN
                                        Attorneys for Plaintiffs
                                        285 West Fourth Street
                                        New York, New York 10014
                                        212.633.0123
                                        altmanlaw@earthlink.net
                                        artesq@earthlink.net