**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------

**JEANNE MARCHIG AND THE MARCHIG**
**ANIMAL WELFARE TRUST,**

                    **10 Civ. 3624 (JGK)**

          **Plaintiffs,**

                      **MEMORANDUM OPINION**
      - against -           **AND ORDER**

**CHRISTIE'S INC.,**

          **Defendant.**
--------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Jeanne Marchig ("Marchig") and the Marchig Animal Welfare Trust ("the Trust"), sued defendant Christie's, Inc., ("Christie's") alleging five causes of action arising from the defendant's 1998 sale of a drawing owned by Marchig and her late husband.  The plaintiffs allege that the drawing was sold by the defendant at a public auction for $21,850, but was later determined to be the work of Leonardo da Vinci and estimated to be worth over $100 million.  Amended Complaint ¶¶ 55, 63-64, 81-82, Marchig et al. v. Christie's Inc., No. 10 Civ. 3624 (S.D.N.Y. August 13, 2010) ("Compl.").

    The defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the motion is granted.

I.

The following facts are taken from the plaintiffs' amended complaint, and are accepted as true for purposes of this motion to dismiss.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

In 1966, Marchig and her husband met Noel Annesley, an expert in old master drawings at Christie's.  Compl. ¶¶ 20, 22.  Between 1969 and 2009, Marchig and her husband (until his death in 1983) consigned dozens of works to Christie's, to be auctioned on their behalf.  Compl. ¶ 26 & Exh. A.

In 1997, Marchig consigned a pen-and-ink drawing ("the Drawing") to Christie's for sale.  Marchig and Christie's entered into a consignment agreement with respect to the Drawing in August 1997.  Compl. Exh. G.  At the time of the consignment, Marchig informed Christie's that her late husband believed the Drawing to be the work of Domenico Ghirlandaio, an early Italian Renaissance painter and teacher of Michelangelo.  Compl. ¶¶ 4-5, 42.  The Drawing was examined by Francois Borne, the resident expert in old master drawings at Christie's, who concluded that the Drawing was a nineteenth-century German work of unknown authorship.  Compl. ¶¶ 42-44.  In a letter to Marchig, he wrote: "Your superb German drawing in the taste of the Italian Renaissance fascinates me.  I think it an object of great taste

2

and I would be ready to try our luck with an estimate of $12,000 to [$]15,000 in New York.  As I told you I would be tempted to change the frame in order to make it seem an amateur object of the 19th century and not an Italian pastiche."  Compl. ¶ 45.

Marching acceded to Borne's attribution, and the Drawing was listed in the auction catalog as "the property of a lady" and "German, 19th Century."  Compl. ¶¶ 47, 53 & Exh. J.  The Drawing was sold at public auction in January 1998 for $21,850.  Compl. ¶¶ 54-55.  Marchig received the proceeds from the defendant, less the defendant's commission, and donated the proceeds to the Trust.  Compl. ¶ 56.

When Marchig sent the Drawing to the defendant, it was in an Italian frame.  Compl. ¶ 49.  The frame was replaced, and the Drawing was sold in a different frame without Marchig's knowledge or consent.  Compl. ¶¶ 49-51.  Christie's did not return the original frame to Marchig.  Compl. ¶ 52.

In July 2009, Marchig received a telephone call from Annesley, informing her that the Drawing had been attributed to Leonardo da Vinci.  Compl. ¶ 57.  This attribution has since been supported by the work of many experts in the field.  Compl. ¶¶ 61-78.  One London art dealer has estimated the Drawing's value at over £100 million.  Compl. ¶ 82 & Exh. K at 3.

On May 3, 2010, Marchig brought this action alleging (1) breach of fiduciary duty, (2) breach of warranty,

(3) negligence, and (4) negligent misrepresentation.  Complaint at 11-15, Marchig et al. v. Christie's Inc., No. 10 Civ. 3624 (S.D.N.Y. May 3, 2010).  On May 23, 2010, Christie's moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The plaintiffs opposed the motion, and sought leave to amend the complaint.  On August 5, 2010, the Court granted the plaintiffs' request, and denied the motion to dismiss without prejudice as moot.  On August 13, 2010, the plaintiffs filed an amended complaint in which they re-asserted the four claims they had made in the original complaint, and added a fifth, for conversion of the frame the Drawing was in when it was delivered to Christie's.  Christie's has moved to dismiss the amended complaint.

## II.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon, 147 F.3d at 188.  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial

but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**A.**

The plaintiffs first allege that the defendant breached a fiduciary duty to them by inadequately investigating the origin of the Drawing. Compl. ¶¶ 94-114. Under New York law, a plaintiff seeking to recover monetary damages for a breach of fiduciary duty must file suit within three years from the time the cause of action accrues. See Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008); N.Y. C.P.L.R. § 214(4). A breach of fiduciary duty claim accrues upon the occurrence of the alleged breach, which here consists of events occurring in late 1997 and early 1998. See Ciccone, 530 F. Supp. 2d at 579. The plaintiffs' breach of fiduciary duty claim is thus untimely

unless they can demonstrate a basis for tolling the statute of limitations.

The plaintiffs next claim that the consignment agreement contained an implied warranty that the Drawing would be correctly attributed, and that the alleged misattribution of the work thus constituted a breach of warranty. Compl. ¶¶ 115-24. The analysis of this breach of warranty claim differs depending on whether the contract between the parties is construed as one for the sale of goods or as one for the provision of services. If the contract is construed as one for the sale of goods, the applicable limitations period is four years from tender of delivery of the goods, which occurred in 1998 at the latest. N.Y. U.C.C. § 2-725; Compl. ¶ 54. If the contract is construed as one for the provision of services, the limitations period is six years from the time of the alleged breach – here, at the time the Drawing was allegedly misattributed, in 1997. N.Y. C.P.L.R. § 213(2). The statute of limitations begins to run at the time of the breach of warranty, even if no damage occurs on account of the breach until a later time. Ely-Cruikshank Co. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993) (citations omitted). Accordingly, the plaintiffs' breach of warranty claim is also untimely, unless there is a ground for tolling the applicable statute of limitations.

The plaintiffs' third claim, for negligence, alleges that the defendant failed to exercise due care in attributing the Drawing. Compl. ¶¶ 125-35. The applicable statute of limitations provides that a claim for negligence must be filed within three years of the time the injury is suffered. See Glick v. Berk & Michaels, P.C., No. 90 Civ. 4230, 1991 WL 152614, at *10 (S.D.N.Y. July 26, 1991); N.Y. C.P.L.R. § 214(4). Because the events underlying the negligence claim occurred, at the latest, in 1998, this claim is also untimely unless a ground for tolling applies.

Finally, the plaintiffs assert a cause of action for "negligent appraisal or representation," Compl. at 17, based on the defendant's alleged failure to conduct a diligent investigation in appraising the Drawing. Compl. ¶¶ 136-49. Under New York law, this cause of action accrues on the date of the alleged misrepresentation, and the statute of limitations is six years. See Doss, Inc. v. Christie's Inc., No. 08 Civ. 10577, 2009 WL 3053713, at *3 (S.D.N.Y. Sept. 23, 2009); N.Y. C.P.L.R. § 213(1). Accordingly, this claim is also time-barred, unless a tolling rule applies.

**B.**

The plaintiffs offer two grounds for finding that one of the limitations periods discussed above began running after 1998: the continuing representation doctrine and the discovery rule.

The plaintiffs first argue that their claims for breach of warranty, negligence, and negligent misrepresentation did not accrue until the termination of the parties' relationship in 2009.  Memorandum of Law in Opposition to Motion to Dismiss at 23-24, Marchig et al. v. Christie's Inc., No. 10 Civ. 3624 (S.D.N.Y. September 10, 2010) ("Mem. Op.").  To reach this result, they ask the Court to extend New York's continuing representation doctrine to the facts of this case.  That doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered," and as a result, a malpractice claim related to the services rendered will not accrue until the representation ends.  Shumsky v. Eisenstein, 750 N.E.2d 67, 70 (N.Y. 2001) (internal quotation marks omitted).  The doctrine "appreciates the client's dilemma if

8

required to sue the [professional] while the latter's representation on the matter is ongoing . . . ." Id.

Similarly, the plaintiffs argue that the claim for breach of fiduciary duty did not accrue until 2009, when Christie's informed Marchig that the Drawing was attributed to Leonardo da Vinci. Mem. Op. at 19, 22. The plaintiffs rely on Golden Pacific Bancorp v. FDIC, 273 F.3d 509 (2d Cir. 2001), for the proposition that under New York law, "the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." Id. at 518 (internal quotation marks omitted).

For the continuing representation doctrine to apply, there must be a "mutual understanding" that further representation is needed on the "specific subject matter" underlying the claim. See McCoy v. Feinman, 785 N.E.2d 714, 722 (N.Y. 2002); Shumsky, 750 N.E.2d at 70 (specific case or legal matter); McDermott v. Torre, 437 N.E.2d 1108, 1114 (N.Y. 1982) (specific condition or health complaint); Tool v. Boutelle, 398 N.Y.S.2d 128, 130 (Sup. Ct. 1977) (particular architectural project). Because the defendant's representation of the plaintiffs in connection with the "specific subject matter" of this suit – the appraisal and sale of the Drawing – ended in 1998, there was no continuing representation to toll the statute of limitations. Similarly,

9

there was no continuing fiduciary relationship with the plaintiffs with respect to the Drawing after it was sold.

The plaintiffs also argue that the statutes of limitations could not have begun to run until at least 2009, when Marchig learned of the alleged misattribution of the Drawing, because until then "they could not have truthfully alleged that they had been damaged." Mem. Op. at 22. However, no discovery rule applies to any of the claims alleged. See, e.g., Ciccone, 530 F. Supp. 2d at 579 ("[I]f a breach of fiduciary duty claim is not based upon fraud, the statute of limitations begins to run upon the breach, and not when the plaintiff discovers the breach." (citing Bastys v. Rothschild, No. 97 Civ. 5154, 2000 WL 1810107, at *34 (S.D.N.Y. Nov. 21, 2000))); Itakura v. Primavera Galleries, Inc., No. 08 Civ. 9027, 2009 WL 1873530, at *2 (S.D.N.Y. June 30, 2009) ("[A] breach of contract claim . . . accrues when the breach occurs regardless of the aggrieved party's lack of knowledge of the breach." (internal quotation marks omitted)); Ackerman v. Price Waterhouse, 644 N.E.2d 1009, 1011 (N.Y. 1994) ("A cause of action [for negligence] . . . accrues when an injury occurs, even if the aggrieved party is then ignorant of the wrong or injury.").

C.

The plaintiffs' last claim is for replevin of the frame in which the Drawing was originally conveyed to the defendant, or for damages equal to its value if the frame cannot be located. The defendants argue that this claim should be dismissed as untimely because the plaintiffs have delayed unreasonably in bringing it.

The New York statute of limitations for conversion and recovery of chattels is three years. See N.Y. C.P.L.R. § 214(3). Generally, New York applies a "demand and refusal" rule to accrual of such claims, meaning that the claim does not accrue at the time of the alleged conversion, but rather at the time "the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." Solomon R. Guggenheim Foundation v. Lubell, 569 N.E.2d 426, 429 (N.Y. 1991). However, the case law also "recognizes that the true owner, having discovered the location of its lost property, cannot unreasonably delay making demand upon the person in possession of that property." Id. at 430 (citation omitted); Songbyrd, Inc. v. Estate of Grossman, 206 F.3d 172, 182-83 (2d Cir. 2000).

The plaintiffs allege that the defendant has been in possession of the frame since 1997. Compl. ¶ 151. It is clear

11

that Marchig has known of the defendant's possession since that time, because the plaintiffs allege that she caused the frame to be delivered to the defendant. Compl. ¶ 151. Under the circumstances, the plaintiffs' delay of twelve years before making a demand for the return of the frame was unreasonable. Accordingly, the plaintiffs' fifth claim is time-barred.[1]

## CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is **granted**. The Clerk is directed to close **Docket No. 25**. The Clerk is directed to enter Judgment dismissing the amended complaint and closing this case.

SO ORDERED.

Dated:   New York, New York
         January 31, 2011

                                    /s/ John G. Koeltl
                                    John G. Koeltl
                                    United States District Judge

---

[1] The defendant also argues that the amended complaint should be dismissed because each one of the plaintiffs' causes of action fails to state a claim for relief, and that the Trust should be dismissed as a plaintiff because it was not a party to or an intended beneficiary of the consignment agreement. Because each of the plaintiffs' claims is time-barred, it is unnecessary to address these arguments.